All rise. This court is now in session. Please be seated. The clerk called the next case, please. 3-10-08-19 City of Peoria and Lee v. Williams v. Warren Danz. Thank you. Mr. Danz, good morning. Your honors. Counsel. Good morning. My name is Warren Danz and I'm actually representing myself here today. Michael Hsu was unavailable and I'm here to argue the case. Basically, we're here today to discuss a tenancy, 10-11-85 in Peoria, Illinois, which is a duplex that I own. This involves a nuisance statute and our basic approach in this case is to show that this is unconstitutional and should be reversed. Basically, this involves over Margaret Mitchell and her husband Michael Hill and her disabled brother who lived at this address. A search warrant was executed on about June 26, 2009. In the process, there was some cocaine found, apparent cocaine, on the son who was sleeping there and it was in his pants. After that, the notice was sent under the statute. Are you challenging that it was cocaine? It was alleged cocaine. I think the evidence was presented that it probably was cocaine. The notice was sent under the statute in question, basically informing that there was a suspected illegal activity. Let me read you the portion of the statute that is outlined. It says that under the statute that the owner shall receive a certified mail informing the owner that the initial investigation revealed alleged suspected illegal activity and the fact that there is an ongoing investigation. It says that the notice shall inform the owner that they are to take legal action within 30 days to abate the situation or to remove the tenant by eviction proceedings. Now, the basis of our case is based on a case in California, Cook v. Bono Park. It is exactly the same statute with the exception of one or two words. In the California case, which is well thought, it found that the statute was unconstitutional for a number of reasons. The first reason is that the notice was insufficient. And let me say that the Bono case, the Cook case, I will call it the Cook case in California, said that the statute deals with property rights that reaches a constitutional dimension. In other words, it's a property right of the tenant with the lease and it's a property right of the landlord. And in the Bono case, Cook v. Bono, it found that the statute failed in a number of reasons. Number one, it found that the terms of the statute were insufficient to specify what items or what criteria of nuisance should be reached in order to enforce the statute. And the Cook case basically said that it requires the forcible entry case to judge and determine whether there is sufficient evidence for the nuisance. And as in this case, okay, let me go further. After I received the notice on June 29th, I did an investigation. I talked to the tenants. I called the city attorney or city officer. And I told him there's no evidence that my tenants did anything wrong, the two Mitchells and their disabled son. And throughout this case, I gave them copies of the fact that any charges against the tenants were discharged, dismissed by the city. No charges at all against the two Mitchells and the husband. And in the fact from the time that I notified the officer from June, I'm sorry, July, August, September, October, nothing was said. I continue to see the tenants to make sure there was no drug activity. The tenants who have been a good tenant for many years. Finally, on December the 2nd, I should say November 19th, there was another notice sent that there's more illegal activity suspected. On December 2nd, a final letter was sent that you have 10 days to evict. The judge in this case found that I was four days late in filing the eviction and awarded $3,000 fine for violation of the ordinance. And that's the issue. So let's look at the facts here. After the initial notice, again, I called him. I gave them all the information that I could. There was no further information given to me by the city of any investigation, which the statute says it's an ongoing investigation. There was no reply. There was nothing. It was assumed then that the matter was resolved. Because the next, and let me just summarize. The Cook case said that basically this failure to provide adequate specification is unconstitutional because it deprives due process of the parties involved of their property rights. That's all contained in the Cook case, which is indirect. And furthermore, the Cook case said that the statute, the ordinance here, is a violation because it has ramifications in terms of the property rights in the future. In other words, if the landlord sues the tenant to get out, the tenant can in turn sue the landlord, correct? And we don't know where that's going to go. And, of course, I know counsel is going to say, well, we indemnify. But the statute just says limited indemnification. What does limited indemnification mean? So there's a real problem there. That's another property right. But anyway, that is the crux of our case. This is unconstitutional. Now, let's go to the second issue that we're presenting here, abatement. The statute, the ordinance, I keep saying statute, the ordinance states that the landlord must abate the situation. I feel that the conduct that's presented by myself and by my manager indicates that we did abate the situation. We made sure that the son was no longer on the property. Mrs. Mitchell said he was not a tenant. He was never in the lease. She didn't even know he was there. Any drugs and charges were brought against him. All charges against the tenants, the three tenants involved, were dropped. And so I believe that the facts and evidence show that it was abated. After we got the second notice on the December 2nd, there was another attempt on my part. I wrote a letter to the city and said, look, there must be some problem here, some mistake. I haven't heard from you for five months, and my clients have insisted nothing is wrong. They've done nothing wrong. All charges were dropped. I sent them a copy of the dismissal from the city itself, who dismissed all charges against these tenants. They didn't listen. They didn't make any offers of any discussion on abatement. They said you must file within 10 days. I did file, but I filed. Well, we'll go into that in just a moment. But anyway, that's the second reason that I believe this court can find and reverse the trial judge. Thirdly, the Cook case also says that another reason fronts constitutionality, because it affects the property rights of innocent people in the unit that have nothing to do with the illegal activity of one person. And that is entirely correct in this case. Jesse Mitchell, who is a 21-year-old son, was in jail. He was charged. But now we've got Mrs. Mitchell, her husband, and her disabled son who have to be evicted from the property. And that's precisely what the Cook case said makes it unconstitutional because it violates due process of these innocent people. And that's another reason why this statute, this ordinance must fail. And finally, I would go to the fourth reason that this court could listen to this appeal, and that is the fact that the 10-day time limit to file is unreasonable. The Cook case specifically said 10 days is unreasonable and unconstitutional. In Cook, now isn't that a little different than here? Because the situation in California was that the 10-day notice was the same as the 30-day notice in Peoria. That's true. So the 10-day notice that you're speaking of in Illinois, in Peoria, is the second notification. That's true, but here's my point. That second day notice they sent to me was of a new activity, which again, the notice gave me no idea of a new activity. You know what the new activity was? They said it was a drug activity. No, it wasn't. One of the neighbors got arrested on the sidewalk outside of the house for what I believe to be disorderly conduct. That was the new incident, which they gave us no opportunity to investigate. So I believe the 10, you know, that time period. Peoria should have restarted. Yeah, that and plus the Cook case said definitely 10 days is not enough, and we don't know what is enough. That's what the Cook case said. The Cook case didn't specify that 30 days would be enough, and I know that the city here is going to come in and argue that. But that's neither here nor there, because when you look at the fact that from the June date all the way up to November, there was nothing, no investigation, nothing. And then all of a sudden on December the 2nd, a letter was sent saying you have 10 days. And was Mr. Hill's, or excuse me, Mr. Mitchell's second arrest or arrest in November, did that have anything to do with the property? Was he arrested at the? Mr. Mitchell was never arrested. Or Mr. Hill, the son. Mr. Hill was never arrested. That's what Mrs. Mitchell testified to. That was a neighbor that was arrested who started an altercation. Mr. Dance, there is some testimony that there was a voice message to the officer of the city who had sent out the notice. That's true. Saying that you were in the process of evicting. That's true. There is testimony to that. But if you notice my testimony, in all of these cases, they never served me. They served my receptions. That was Joe, who apparently must have said that. But if you read my testimony, I called after that. And I left a message with Officer Hermansonski and told her that I was investigating this and that I would try to find an explanation for it. And when I asked her whether she made that comment, whether she remembers that comment, she said she didn't remember. I, in fact, asked her, did you tape record the conversation? She says, no, I didn't. In fact, Officer Hermansonski said that she never investigated nothing. She never talked to no police officer. She never. The only thing she did was to look at the police report and she said, that's my job. I just make that decision. That was it. Now, going back to this 10 day notice thing, assuming that the 10 day notice is correct. And assuming that one would find this to be proper and constitutional. I received the 10 day notice was received in my office on December 4th, which is a Friday. I testified that I was out of town and I didn't see the 10 day notice until December 7th. And when I received it, I did make it back to my manager, Joe. And I told him we have no other choices now. We have to file. And she did file it on December 16th. Well, if you go from December 7th to December 16th, that's nine days. That's within the 10 day time limit. They went from December 2nd, the date it was sent to December 16th, which is four days over. And that's where the fine is based on four days. So even at the very worst that you can look at, I believe that it was filed within a reasonable period of time. I'm sorry? You have two minutes. Okay. And furthermore, if you will look at the statute, the statute specifically states that no prosecution of this statute should be made on G2. In the event that reasonable diligence in the prosecution of said eviction proceedings. It says that in the ordinance. I think that applies. In other words, what I'm saying here is we got it on December 4th. It was signed by my receptionist. I was out of town in Clinton. By the time I got back on Tuesday, December 7th, that's when I initiated the request to file. It was filed within 10 days of that date. So it's within the statute. My secretary did file the eviction proceedings. So that's the fourth thing. I think it's unconstitutional to allow only 10 days. I believe that that last notice I received was a new incident. I believe that the abatement definitely took place in the five months because it said 30 days. They never called me in 30 days. They never sent me another letter in 30 days. I left them messages, and I gave the information to them that the thing had abated. I sent them a copy of the dismissal by the court, by the city itself, of all charges against my tenants. I mean, you know, what more do you reasonable person anticipate? And so nothing was heard until, obviously, this new incident that apparently occurred on November 16th, 2009, which I knew nothing about. And another thing which is strange in this case, when I asked Officer Hermitinsky, did you investigate any of these? Did you talk to the police officers? Did you go back and look at the results? Did you talk to the tenants? Her answer was no. She never did nothing. And so what is this clause that states that there was an initial investigation? It says of suspected illegal activity. There we go, suspected legal activity. It's no notice to the landlord what the suspected legal activity is. And you know what the response was, Officer Hermitinsky and the city? They said, hey, it was your duty to file for a copy of the police report under Freedom of Information Act. You didn't do that, so it's your fault. Your time is up, Counselor. I'm sorry? Your time is up. Okay. For those reasons, I ask that we speak reversed and find the components unconstitutional. Thank you, Mr. Dance. Ms. Williams, good morning. Good morning. May it please the Court, Counsel, my name is Sunny Williams, and I am here on behalf of the city of Peoria, the plaintiff appellee in this matter. First of all, since the appellant's brief is void of standard of review and is not clear with the issues presented, I will clarify the issues in the standard of review as I did in our brief, in the city's brief. There are two issues before this Court. The first is a legal issue, whether the Section 20-207 of the Code of the City of Peoria is constitutional. And since this is a legal issue, the standard of review is de novo. The second issue before this Court is a factual issue that Mr. Dance kind of interweaves with this legal issue. But what the defendant appellant incorrectly argues as estoppel in his brief is actually a factual dispute of the findings by the trial court. And the standard of review for a factual finding by a trial court is that as long as the findings are not against the manifest way of the evidence, this Court should affirm the finding of the trial court. First of all, as to the legal issue on this matter, as stated in the city's brief, there's a presumption of constitutionality of an ordinance and statutes. And in this case, it's an ordinance. And even if its reasonableness is barely debatable, ordinance is constitutional unless it's clearly arbitrary and unreasonable and unrelated to the public purpose. In this case, as indicated, and I believe the records will reflect, the ordinance that was passed by the city council has a finding that the city council found the use of the property for the purpose of selling or possessing controlled substance to be harmful for the entire neighborhood. This affects not only that house, but all the other houses and all the other law-abiding citizens enjoying their homes in that neighborhood. And that's contained in record C-24, the city ordinance and the council's finding. There is reasonableness in the city's ordinance. Number one, unlike what Mr. Dance would like to argue, this ordinance does not contain a 10-day notice, 10-day time period to initiate eviction. The ordinance sets steps and standards in which if the property owner needed more time, they can do that. The first letter after an arrest for someone selling or using narcotic substance to the property, the first letter sent out. That gives the property owner 30 days to call and initiate some type of abatement process. And as the trial court found, the abatement process doesn't necessarily mean that it has to be an eviction, but some type of legal action must be taken to abate the violation or abate the nuisance. And if that is not done after that 30-day period, there's a further 10-day period in which the property owner, again, has further time to take any abatement action. Now, if there is any question regarding the sufficiency of whether illegal activity was conducted on that property, the property owner has due process rights to request a hearing before the city manager, and that would actually toll and stay any prosecution by the city that the owner failed to comply with the ordinance. So if any time during this, once the letter is sent out, they appeal to the hearing office, to the city manager or his or her designee, and there's a hearing in which the city has to prove that there is sufficient cause to initiate eviction or any other legal action. And that would include the abatement. For instance, let's say that the letter comes in and the landlord opens it, calls his tenants, and we don't know anything. So that would be how you would determine whether or not what information that the city has. Yes, and instead of what Mr. Danstad was, he called his tenants and relied on their words, and as Judge Perham noted in his finding at the end of the trial, he, and this is on C30 or R2, R2-38, and this is Judge Perham. I understand your investigation involved you talking to the Mitchells, but Mr. Danst, with all due respect to you, what do you think the Mitchells are going to say, that I'm involved in drugs and I have a drug problem? So Mr. Danst, instead of asking the city to prove the sufficiency of the illegal activity occurring on the property, his property, he relied on the word of the Mitchells, and he could have had a longer time period to initiate, to request a hearing that would have stayed the enforcement. No, he did not do that. He relied on the information provided by the Mitchells who, as the trial court correctly noted, would probably not tell him the full information. Did he then, though, it's my understanding that in the nature of abatement, that he told the Mitchells that Jesse could not stay there, he wasn't on the lease, couldn't stay there anymore, and they agreed to that, and that in fact the charges against Mrs. Mitchell and Mr. Hill were dismissed, and he provided that notification. And Mr. Danst is confused on what was dismissed. These are ordinance tickets that I prosecute personally, not personally, but officially as an assistant corporation counsel, but oftentimes a prosecutor would dismiss for various reasons. You want to wait until you get the person who is more culpable than another person, or you find out that the officer incorrectly cited the tenants when he should have cited the property owner, Mr. Danst. That could have been various reasons. And as the trial court noted, that's irrelevant to whether the case against Mr. Danst could proceed. Now, as far as the Jesse Mitchell and that part of the abatement, that does not, if Mr. Jesse Mitchell was the only person who was found with illegal substance, that would be okay and fine. But in this case, Margaret Mitchell, the woman who was on the lease, was found with a crack pipe and that she discarded. And the officers observed her discard this crack pipe when the warrant was executed. So it wasn't just Jesse Mitchell who had the illegal substance, the drug paraphernalia, but it was also Margaret Mitchell. And I think Mr. Danst tends to glaze over that and not mention that. Back to my legal issue. First of all, this court is not bound by a holding from California. And as cited by the city's brief, this is a persuasive argument, but this court is not bound by it. Secondly, let's look at what the Cook case decided, what the California appellate case decided. They looked at a Buena Park ordinance that is different from the ordinance that Mr. Danst was cited with. The California court had three problems with the Buena Park's ordinance. Number one, that ordinance from California failed to provide specific information for the landlord to take detainer action. In the city's ordinance, section 20-207, there is a mechanism to get the sufficient information, and that is to request a hearing before the city manager or his or her designee, and that's when the information can be obtained. Also, as to the indemnification, if at any time that the detainee during the eviction process or they can request the legal counsel from the city of Peoria to aid in that defense. So there's a mechanism to provide for the first problem that the California court had with the Buena Park's ordinance. The second problem that the California court had with the Buena Park's ordinance is that there was a 10-day notice time requirement for the landlord to initiate unlawful detainer action, and that 10-day is short. And as Your Honor, Justice O'Brien noted, in the city's case, there's actually a 40-day notice. The 30-day for the first day for the first letter, and the 10-day for the second one. So we're not talking about a 10-day time period that Mr. Dance keeps putting in his brief. This is a 40-day requirement, and there's further time period in which if the landlord requested a hearing, that would stay the prosecution. The third problem that the California court had was the Buena Park's ordinance required the landlord to prevail in the unlawful detainer action. There is no such requirement in the city's ordinance. We do not require that the landlord has to prevail in the eviction process. So that was the three factors, the three problems that the California court had, and this ordinance does not suffer from that same problem. Now, as to the, simply put, the ordinance of Buena Park is not the same ordinance that the city adopted under Section 20-207, and the Peoria's ordinance does not suffer from the same problem. So this court should affirm the constitutionality of our ordinance, the city's ordinance. As to the second issue, the factual finding by the trial court should be upheld unless it is against the manifest weight of the evidence. And Mr. Dance, in his brief, likes to claim factors that are favorable to him but doesn't actually address things that are unfavorable to him. For instance, as I stated earlier, Officer Slavin testified that he saw Margaret Mitchell throw what looked to be a crack cocaine pipe over, I believe it was either the refrigerator or some type of appliance at the location. The trial court noted that that crack pipe presented to the court looked altered for the purpose of to smoke crack, and that there was what seemed to be a crack cocaine residue. Now, that was on Margaret Mitchell. The second person that had any illegal substance on them was Jesse Mitchell. Jesse Mitchell is the son of Margaret Mitchell. And Jesse Mitchell was found sleeping in a bedroom, one of the bedrooms in the room. He had, out of, and it wasn't his pants that he was wearing when he stood up, when the officer went into his bedroom. It was actually a boxer shorts that, out of the boxer shorts came the baggie full of crack cocaine substance. And Mr. Dance is not contending that that was crack cocaine that they found on Mr. Jesse Mitchell. In addition to that, officer, I believe, one of the officers who executed the search warrant, found envelope that had a mail from the Illinois Secretary of State requesting the license renewal for Mr. Jesse Mitchell. And it was for that property, 1011 East Frye, and it was addressed to Jesse Mitchell. So the trial court found, based upon those testimony and factors, that Jesse Mitchell indeed lived at the property, and as did Ms. Margaret Mitchell, and found that illegal substance was either being used or sold from that property, and therefore found that the illegal activity occurred. Now, Mr. Dance wants to come in here and say that, well, I took the action, and I did all this, and I was out of town during this period when the third letter was sent out. And mind this court, there is no requirement under the city ordinance to send a third letter requesting that the landlord take further abatement action. But, in fact, in this case, a third letter was sent out. And that letter was sent out, I believe, as the records reflect, sometime in December 2nd, and that gave a 10-day further time period for Mr. Dance to initiate the eviction. And as the record reflects, Mr. Dance did not initiate, file the eviction until December 16th. And that was, and the deadline given by the third letter would have been December 12th. And so that's- No, it was within two minutes. Yes, thank you. And that would have been the four-day. And under the ordinance, the trial court properly assessed the correct amount of fine, which is $750 per day, and found Mr. Dance guilty of the violation. And for this court to reverse the findings by the trial court, even though there's contradictory statements presented, this court gives wide deference to what the trial court has reached, the factual findings. The trial court, sitting and observing the witnesses, their body language, their testimony, what's been presented, the trial court is in the best position to weigh the credibility of the witnesses. And in this case, the trial court found the testimony presented by the city to be more credible than the testimony presented by Mr. Dance. And therefore, this court should not reverse the findings unless it is against the manifest weight of the evidence. And there's sufficient record to indicate that the trial court's finding was proper. And that for the reasons stated in our brief and the cases cited, we believe that the section 20-207 of the city code is constitutional. And for those reasons, we request this court to affirm the findings reached by the trial court. Thank you. Any other questions? I have a question. My question is not based on constitutionality, but based on the facts of this case. Is it fair to say that Mr. Dance abated the nuisance because nothing happened within 30 days? No, Mr. Dance did not abate the nuisance because Ms. Margaret Mitchell continued to live on that property. Without any other suspected illegal activity. There was further illegal activity, but- In November. Oh, in November. Which was well beyond the 30 days. So can it be argued that he did abate the nuisance for the 30 days? Yeah, the abatement of the nuisance is, he didn't abate it just because someone, the city didn't go out and do another drug bust. That could mean that someone can use the property for selling or using drugs, and they lay low because they know a letter was sent out. So they lay low, they get out of trouble, and then after that time period- So what's the window for abatement? Let's say that Jesse was not arrested in November of the same year, but was arrested four years later at the same residence. Then obviously that- Does that require another 10-day notice? No, that obviously shows that Mr. Dance has not abated the violation. He has not taken any legal measures to keep Jesse Mitchell out of that property. And we could actually issue him a citation without sending any other notices because he obviously allowed Mr. Jesse Mitchell back on the property. So that would be, you know, the requirement of the ordinance is that you have to take some abatement action, including eviction. But it could be legal proceedings to abate the violation. Just waiting and seeing is not abating the violation. Are there any other questions? Thank you, Ms. Williams. Mr. Dance, any rebuttal? Thank you. As a follow-up, in response to the abatement defense, it went from July all the way up through November with nothing was said. But if you note the testimony of Mrs. Mitchell, she stated that the police officers were there almost every day watching her property. And no comments, no investigation information was given to me, and yet I gave the investigation to the city. And in response to the second issue. What do you mean you gave the investigation to the city? I told the city that the tenants informed that they were not involved with this at all. It was only the sum. And then the tenants gave me the copies of the charges against them by the city that were dismissed. And I gave that to the city. I mean, why would the city want to come in and do a forcible entry, forcible complaint and make me do that when they themselves dismissed all charges against the tenants? So basically what the Cook case said is that they're making me try the case in the forcible case. And then counsel says that there's differences between the Cook case statute. And there's very little difference, particularly not in the suspected illegal drug activity. There's no specifications as to what it would be. And furthermore, this very issue states that the landlord is required to try the case against the tenant on what is suspected illegal drug activity. Well, counsel has properly pointed out, well, there's no requirement in our statute that he succeed. Well, what if he doesn't succeed? Is he subject to a countersuit and his property rights for X number of dollars? And then under the ordinance, there is nothing in this ordinance that say they will indemnify the landlord if he gets countersued for $100,000. So if to me that is an open violation of the constitutional rights, which is expressed in the Cook case, then counsel says the 30-day time limit. We have a 30-day time limit. All the Cook case said is we don't know whether 30 days is enough to investigate. We don't know if it's 10, 30, but we know 10 days is not enough. And you'll note that when they notified me on November the 16th, they mentioned a new incident. And that's when I tried to get the information. I sent them a letter back immediately and said, again, I contacted my tenant. We don't know what it is. And all they did is sent me a notice that you have 10 days. And when I asked Officer Remitensky, she says, that's it. I don't know any other remedy. You just have to file under the statute. So there's a clear misunderstanding. And Jesse Mitchell, all the evidence in this case indicates that he was not a tenant. There was one letter that the officer found that was addressed to him on a driver's license. One letter. That's it. And so the counsel also states, well, our case is different because you're going to appeal it to the manager. Well, all the ordinance says is you can appeal it to the manager, and he must decide it with legal principles. What is legal principles? And then he says his decision is final. Again, I don't think that clause helps unconstitutionalize this at all or unconstitutionalize it at all. Doesn't the statute provide for an appeal to the circuit court? No. It doesn't? It doesn't. I thought it did. Not that I can see. And so I think if you just look at the Cook case and the ordinance of the Cook case, it's difficult to compromise those decisions in terms of this case. And I do believe that the risks of forcible entries against tenants, taking away their property rights, without more specification certainly creates a serious question in my mind about the constitutionality of this type of statute. Mr. Gates, I have a question I'm going to back up to. I believe it was something you just mentioned about a conversation with an officer. I think it was, you said, Herman Zinsky about what is it that you can do, and she said eviction is the only thing. That's right. So, I mean, the ordinance talks about abated or eviction, but it's her opinion that eviction is the only abatement? That is correct, entirely correct. That's the way I read her testimony. And she didn't mention anything about abatement or investigating to see if abatement had taken place. And obviously in my brief, that was one of the issues that we presented. I believe that we did everything that we could do to try to resolve the problem. We went there numerous times. Jill went there numerous times, talked to the tenants and said Jesse cannot be on the property. And nothing was heard from the city. And we presented this to the city, along with the dismissal of the charges. That's what really surprised me. I'm thinking, well, here they're dismissing everything, and here they're raising this issue here. And they never talked to me about it. You sent me a letter and said you have ten days, that's it. And finally I told Jill, we just have to file, that's it. Anyway, that's my position. You filed for failure to pay rent, not for that you were going to do it. Well, it was, but I put in there my testimony that we had given them a letter at the same time saying that the city was requiring them under the ordinance to be evicted. And they knew that. So she put that in there. It might have been a misnomer, but they were well aware of the situation. Because after I got the ten days, I even went and saw them. And I said, hey, look, you've got to leave. I can't do anything about it anymore. Because it's going to go against me. But was there Jesse with a notice as landlord that he was not allowed on the premises and you prosecuted him for trespassing? Well, Mrs. Mitchell informed me from the very beginning that she didn't even know he was there the day it happened. But she said definitely he's not allowed to be on the property anymore. And as many times as we went out there, he was never on the property again. And we went out there routinely because it's only, you know, maybe ten blocks from my office. And that I thought was the best I could do without any further information coming back from the city. You know, an ongoing investigation. But that's basically where it stands. And my last argument is on December 4th. My receptionist got the letter on December 4th. I didn't get it until at least Monday or Tuesday. I testified about the 7th because I have an office in Decatur. And then I gave it to Jill, and she filed it nine days later. So, you know, and the ordinance itself says here that no person shall be charged with violation of this section if such a person has proceeded with reasonable diligence in the prosecution of said eviction proceedings. I mean, I believe that we prosecuted as reasonably well as we could. And I don't believe that even if you discount the fact that I got it on the 4th, ten days is the 14th. That's only two days. And they're arguing that the day they sent it is the day that ten days runs. I don't see how that's possible. It should, if at all, it should run the day you received it by my receptionist. If the city is indicating that it's an ongoing process, was true when they sent the first notice and that they continued to send notices, you're not really limited to ten days. You've had 40 days plus all of that time between the end of July and November to figure out what to do. That's true. In July, August, September, October up to November 16th, there was no information from the city at all. Well, that's because somebody from your office called them and told them that you were initiating eviction proceedings. Well, that was not my conversation with Officer Hermosinski. Okay, but somebody from your office called and told the city and all they knew. That was a testimony of Officer Hermosinski, but she didn't indicate who it was. She indicated it wasn't me. But you did in your earlier argument because I asked the question and you said that was somebody from your office and you named it. That's my problem. I don't know who would have said that, but notwithstanding that factor, I called and left a voicemail with her and told her that I had investigated and my tenant said there was no problems and later also informed that the charges were dismissed and never received a response and also went out once a week to the Mitchells and stopped by their apartment and found that there was nothing going on and that the police were there almost every day. In fact, Mrs. Mitchell testified that the police knocked on her door almost every day to see if everything was going okay. Are the Mitchells now living in property that you own? Yes. Thank you. We'd like to thank both of you for your arguments this morning. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will now stand in recess until 1 p.m. The court is now in recess.